UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

ROLAND HAMILTON,

    Plaintiff,

 v.

LISA WALSH,

    Defendant.

3:14-cv-00565-MMD-VPC

**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE**

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is defendant's motion for summary judgment (#28), plaintiff's opposition (#33), and defendant's reply (#34). Having thoroughly reviewed the record and papers, the court recommends that defendant's motion be granted.

**I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Roland Hamilton ("plaintiff") is an inmate in the custody of the Nevada Department of Corrections ("NDOC"). Plaintiff is presently incarcerated at Ely State Prison, but the events giving rise to this case occurred at Northern Nevada Correctional Center ("NNCC"), where plaintiff was previously held. Proceeding *pro se*, and pursuant to 42 U.S.C. § 1983, plaintiff asserts civil rights claims against NNCC Associate Warden Lisa Walsh ("defendant") in her official and individual capacity. (#5 at 2.)

Except as noted, the following events are undisputed. On February 16, 2012, the NNCC Classification Committee sent plaintiff a memorandum alerting him that he had been deemed ineligible to visit with minor children pursuant to Administrative Regulation ("AR") 719. (#28-6 at 4.) AR 719 provides, in pertinent part, that inmates with an arrest or conviction "for a sexual crime involving a minor child or other violence/abuse of a minor child are ineligible to visit with the victim of their crime," or with "any other minor child without specific approval of the Director."

(#28-2 at 5.) In this instance, the visitation restriction was applied in error—plaintiff had been convicted of sexual assault, but the crime was not against a minor. (*See* #28-10 at 2; #28-12 at 4.)

Plaintiff contends that he spoke with his caseworker about the memorandum, and that his caseworker instructed him to file an informal grievance if he wished to challenge the restriction. (#5 at 5.) Plaintiff filed an informal grievance on February 28, 2012, initiating grievance log number 2006-29-40401. (#28-9.) Defendant rejected the grievance as procedurally improper because plaintiff had failed to demonstrate in the grievance that he had first attempted to resolve the issue with his caseworker: "Per AR 740.04.1 you are expected the resolve grievable issues through discussion with your caseworker prior to initiating the grievance process, using DOC (3012)."[1] (*Id.* at 6; #28-12 at 3.) Plaintiff did not re-submit an informal grievance in log number 2006-29-40401.

On October 16, 2012, plaintiff submitted a second informal grievance regarding the visitation restriction. (#28-7 at 229–41.) The grievance was assigned log number 2006-29-53025. (*Id.*) On December 26, 2012, having not yet received a response at the informal level, plaintiff filed a first level grievance. (#28-7 at 144–49.) Plaintiff received notice on January 2, 2013 that defendant had rejected his informal grievance as duplicative of grievance number 2006-29-40401. (*Id.* at 228.) Pursuant to AR 740.09, it is an abuse of the grievance process to file more than one grievance regarding the same claims or incidents. (#28-3 at 9.) On March 26, 2013, plaintiff received notice that his first level grievance was similarly rejected. (*Id.* at 142.) Therein, defendant wrote: "You were asked several times to submit your grievance correctly and failed to do so. In addition you were told that this grievance is a duplicate to #20062940401." (*Id.*) Defendant also sent plaintiff a memo, received on May 10, 2013, explaining why the grievances were rejected. (*Id.* at 71.) Plaintiff subsequently filed a second level grievance, which was procedurally rejected on July 25, 2013. (*Id.* at 1–7.)

---

[1] NDOC's grievance process is governed by AR 740. The cited provision provides states: "Inmates are expected to resolve grievable issues through discussion with their caseworker prior to initiating the grievance process, except as noted in AR 740.03, number 2, or where resolution is not possible, such as disciplinary issues." (#28-3 at 5.)

In January 2013, while attempting to navigate the NDOC grievance process, plaintiff also sent the NDOC Director a letter regarding the visitation restriction. (#28-12 at 4; #28-13.) The matter was forwarded to defendant, who in turn forwarded it to a caseworker. (*Id.*) The caseworker determined that the restriction should not have been imposed. (*Id.*) Consequently, defendant removed the restriction on March 4, 2013. (*Id.*)

Plaintiff submitted a third informal grievance on April 11, 2013, initiating grievance log number 2006-29-59510, and alleged that defendant had rejected his previous grievances so as to conceal the NNCC Classification Committee's mistake and inhibit plaintiff's investigation. (#28-8 at 2–10.) Defendant denied the grievance on the merits, commenting that plaintiff had been advised numerous times about the grievance process, and also that the restriction had been removed from plaintiff's file. (*Id.* at 2.) Plaintiff continued to grieve the issue, and received denials on the merits at the first and second level from NNCC Warden Isidro Baca and Deputy Director Sheryl Foster. (*Id.* at 38, 44.)

For these events, plaintiff asserts that his First Amendment, Eighth Amendment, and Fourteenth Amendment rights were violated and that he is entitled to monetary relief. (*See* #4.) The District Court screened the complaint and allowed plaintiff to proceed on two claims: a First Amendment access to the courts claim, related to defendant's denial of plaintiff's informal grievances, and a Fourteenth Amendment due process claim for the misclassification of plaintiff as having committed a sex crime against a minor.[2] (#4 at 5, 7.) Defendant now moves for summary judgment as to each.

## II.   LEGAL STANDARD

Summary judgment allows a reviewing court to avoid unnecessary trials. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). The court properly grants summary judgment when the record demonstrates that "there is no genuine issue as to any material

---

[2] The District Court dismissed a deliberate indifference claim, an equal protection claim, and a due process claim related to defendant's grievance denials. (#4 at 8.)

fact and the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Id.* Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996). At this stage, the court's role is to verify that reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth. *Schmidt v. Contra Costa Cnty.*, 693 F.3d 1122, 1132 (9th Cir. 2012); *Nw. Motorcycle Ass'n*, 18 F.3d at 1472.

Summary judgment proceeds in burden-shifting steps. A moving party who does not bear the burden of proof at trial "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element" to support its case. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Ultimately, the moving party must demonstrate, on the basis of authenticated evidence, that the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party as to disputed material facts. *Celotex*, 477 U.S. at 323; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014).

Where the moving party meets its burden, the burden shifts to the nonmoving party to "designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). "This burden is not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence. . . . In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a

verdict in the non-moving party's favor." *Id.* (citations omitted). The nonmoving party may defeat the summary judgment motion only by setting forth specific facts that illustrate a genuine dispute requiring a factfinder's resolution. *Liberty Lobby*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324. Although the nonmoving party need not produce authenticated evidence, Fed. R. Civ. P. 56(c), mere assertions, pleading allegations, and "metaphysical doubt as to the material facts" will not defeat a properly-supported and meritorious summary judgment motion, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

For purposes of opposing summary judgment, the contentions offered by a *pro se* litigant in motions and pleadings are admissible to the extent that the contents are based on personal knowledge and set forth facts that would be admissible into evidence, and the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

### III.   DISCUSSION

**A.   Civil Rights Claims Under § 1983**

42 U.S.C. § 1983 aims "to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006) (quoting *McDade v. West*, 223 F.3d 1135, 1139 (9th Cir. 2000)). The statute "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights[,]" *Conn v. Gabbert*, 526 U.S. 286, 290 (1999), and therefore "serves as the procedural device for enforcing substantive provisions of the Constitution and federal statutes," *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). Claims under § 1983 require a plaintiff to allege (1) the violation of a federally-protected right by (2) a person or official acting under the color of state law. *Warner*, 451 F.3d at 1067. Further, to prevail on a § 1983 claim, the plaintiff must establish each of the elements required to prove an infringement of the underlying constitutional or statutory right.

In this case, plaintiff has alleged violations of his constitutional rights, and defendant is a state prison official who was acting under color of state law. Plaintiff easily satisfies § 1983's

1 threshold requirements, and the court will proceed to his constitutional claims. However, the
2 Eleventh Amendment bars plaintiff from seeking damages from defendant in her official capacity.
3 *Brown v. Oregon Dep't of Corrs.,* 751 F.3d 983, 988–89 (9th Cir. 2014) (citing *Pennhurst State*
4 *Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984)). Thus, the court constrains its analysis to
5 plaintiff's individual capacity claims.

**B.     First Amendment Access to the Courts Claim**

Plaintiff contends that defendant interfered with his constitutional right to access the courts by improperly rejecting his grievances for procedural deficiencies: those continued rejections denied him "access to the grievance process, which is the first step to access to the courts." (#33 at 2.) Defendant argues that summary judgment with regard to plaintiff's First Amendment claim is warranted on two grounds. First, she maintains that plaintiff's allegations are "factually unsubstantiated," as plaintiff's properly filed grievances were answered at each level of the grievance process. (#28 at 10.) Second, plaintiff's claim fails as a matter of law because he has failed to allege any injury resulting from the alleged impediments. (*Id.*)

Prisoners have a constitutionally guaranteed right to access the courts, *see Lewis v. Casey*, 518 U.S. 343, 346 (1996), which "extends to established jail grievance procedures." *Bradley v. Hall,* 64 F.3d 1276, 1279 (9th Cir. 1995), *overruled on other grounds by Shaw v. Murphy*, 532 U.S. 223, 230 n.2 (2001). However, the Supreme Court has cautioned that the right of meaningful court access does not exist in an "abstract, freestanding" form. *Lewis*, 518 U.S. at 351. Rather, the right "is ancillary to [an] underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). The requirement that a plaintiff have suffered an actual injury is jurisdictional, and cannot be waived. *Nev. Dep't of Corrs. v. Greene*, 648 F.3d 1014, 1018 (9th Cir. 2011) (citing *Lewis*, 518 U.S. at 349). Accordingly, to establish a violation of the right of access to the courts, a plaintiff must show that his or her ability to litigate a "non-frivolous" or "arguable" underlying claim was frustrated or lost. *Christopher*, 536 U.S. at 412–15.

Plaintiff's allegations are insufficient to meet the actual injury requirement. As set forth in *Christopher*, plaintiff must have (1) described the underlying claim that was frustrated, and (2) alleged facts showing that it was actually frustrated. *Id.* at 415. He has done neither. The events described in plaintiff's complaint arguably give rise to two underlying due process claims: defendant's improper grievance denials and the misclassification of plaintiff as having committed a crime against a minor. The first of these fails to meet the "arguable" or "non-frivolous" bar, as there is no constitutional right to have grievances accepted or processed in a particular manner. *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003). With regard to the second, plaintiff has not shown that he suffered an actual prejudice, such as the inability to meet a filing deadline or to present his claim. *See Lewis*, 518 U.S. at 351. A delay in the ability to file papers or petition the court, in and of itself, is not enough, *see Hudson v. Robinson*, 678 F.2d 462, 466 (3d Cir. 1982); *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003), and defendant's actions did not foreclose plaintiff's opportunity to pursue the claim, as is illustrated by the instant action.

Without having suffered an actual injury, plaintiff cannot prevail on his access to the courts claim. Therefore, summary judgment is appropriate.

**C.     Fourteenth Amendment Due Process Claim**

Plaintiff was not interviewed by defendant or any member of the NNCC Classification Committee prior to the imposition of AR 719's visitation restriction, nor was he afforded the opportunity to view or refute the evidence against him. As such, plaintiff argues that he was denied his Fourteenth Amendment right of due process. (#33 at 3.) Defendant moves for summary judgment on the grounds that the misclassification and visitation restriction did not infringe on a protected liberty interest. (#28 at 12.) In the alternative, she argues that she cannot be held liable under § 1983 because she did not implement or maintain the restriction, and that she is entitled to qualified immunity. (*Id.* at 12, 14.)

The Due Process Clause of the Fourteenth Amendment prohibits states from depriving individuals of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. To invoke due process's procedural protections, however, a plaintiff must first identify the

1  protected liberty interest that is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Liberty
2  interests may arise from the Constitution or from an expectation created by state statutes and prison
3  regulations. *Id.*; *Neal v. Shimoda*, 131 F.3d 818, 827 (9th Cir. 1997). In the prison setting, a liberty
4  interest arises from the Constitution when the conditions of confinement "exceed[] the sentence in
5  such an unexpected manner as to give rise to protection by the Due Process Clause of its own force
6  . . . ." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). A liberty interest created by the state is
7  generally limited to "freedom from restraint which, while not exceeding the sentence in such an
8  unexpected manner as to give rise to protection by the Due Process Clause of its own force,
9  nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary
10 incidents of prison life." *Id.*

11       Courts analyze procedural due process claims in two parts. First, the court must determine
12 whether the plaintiff possessed a protected interest. If so, the court next compares the required level
13 of process with the procedures the defendant observed. *Brown v. Ore. Dep't of Corrs.*, 751 F.3d
14 983, 987 (9th Cir. 2014). To prevail on a claim, plaintiff must have had a protected liberty interest,
15 and the defendant's procedures must have been constitutionally inadequate. *Id.*

16       The Due Process Clause contains no embedded right of an inmate to any particular
17 classification, *Sandin*, 515 U.S. at 485–86, or to unfettered visitation privileges, *Kentucky Dep't of*
18 *Corrs. v. Thompson*, 490 U.S. 454, 460–61 (1989). Further, plaintiff has not cited, and the court
19 has not found, any cases in which a misclassification of the type experienced was found to have
20 infringed on a constitutional right.

21       However, the classification of an inmate as a sex offender may create the type of atypical
22 and significant hardship that implicates a state-created liberty interest. *Neal,* 131 F.3d at 830. In
23 *Neal*, the Ninth Circuit considered the due process claims of two inmates who had been labeled sex
24 offenders by the Hawaii Parole Authority. *Id.* at 822–23. Pursuant to state law, classification as a
25 sex offender triggered a mandatory treatment program that the inmate was required to successfully
26 complete as a precondition to parole. *Id.* at 830. The court, emphasizing the stigmatizing effect of
27 the classification *coupled with* the resultant impact on parole eligibility, concluded that a protected

1 liberty interest was at stake and the plaintiffs were due process. *Id.* One of the inmates in question
2 had been convicted of a sex crime in a prior adversarial setting; therefore, the court found that he
3 had "received the minimum protections required by due process." *Id.* at 831. The other inmate,
4 who had been indicted but not convicted of a sex crime, was never afforded "an opportunity to
5 formally challenge the imposition of the 'sex offender' label in an adversarial setting," and was
6 entitled to such an opportunity. *Id.*

7 *Neal* is distinguishable from the facts at hand. To begin, Plaintiff was classified as a sex
8 offender within the NDOC system prior to the imposition of the AR 719 restriction, by virtue his
9 conviction for sexual assault. (#28-10 at 2; #28-11.) As to that classification, plaintiff was afforded
10 the required due process protections. *See Neal*, 131 F.3d at 831. Thus, the only label potentially at
11 issue is the NNCC Classification Committee's determination that plaintiff committed a sex crime
12 against a minor; plaintiff was not convicted of such an offense in an adversarial setting.[3] But while
13 the Committee caused plaintiff's visitation privileges to be curtailed under AR 719, plaintiff has not
14 alleged facts from which a reasonable factfinder could infer that plaintiff was also subjected to some
15 sort of mandatory coercive program affecting his sentence or parole. The impact on inmates' parole
16 eligibility was critical to *Neal*'s finding of a protected liberty interest. *See id.* at 830.

17 The consequences of plaintiff's misclassification more closely align with those considered by
18 the Southern District of California in *Cooper v. Garcia*, 55 F. Supp. 2d 1090, 1092 (S.D. Cal. 1999),
19 where an inmate was denied family visitation privileges after being classified as a sex offender
20 within the prison system. The inmate argued that prison officials violated his due process rights by
21 failing to conduct an individualized assessment prior to the classification. *Id.* Reviewing plaintiff's
22 claim, the district court first concluded that California law did not create a right to unrestricted
23 visitations, as the applicable prison regulations consistently recognized that visitations were
24 privileges that could be denied or modified. *Id.* at 1098–1100. Next, relying on *Neal*, the court

---

[3] In making this distinction, the court recognizes that the stigma associated with the "child molester" label is as severe, if not more so, as the "sex offender" label. *See Neal*, 131 F.3d at 829 n.12.

1  found that the denial of visitation privileges was not the type of mandatory, coercive treatment that
2  must be coupled with a sex offender classification in order to affect a protected liberty interest. *Id.* at
3  1101–02.  Because plaintiff had not been denied a liberty interest, his due process claim was
4  dismissed. *Id.* at 1102.

5  Here, as in *Cooper*, NNCC's prison regulations do not discuss visitations as a "right," and
6  plaintiff has made no attempt to show that the loss of such privileges imposed on him an "atypical
7  and significant hardship . . . in relation to the ordinary incidents of prison life," *Sandin*, 515 U.S. at
8  482.  Accordingly, the visitation restriction alone did not infringe on a liberty interest created under
9  state law.  The court reaches the same conclusion with regard to plaintiff's misclassification.  There
10 is no evidence that, by being labeled as having committed a sex crime against a minor, plaintiff's
11 sentence or parole was impacted.  Nor has plaintiff identified any other adverse consequences
12 resulting from the label. *See Kritenbrink v. Crawford*, 457 F. Supp. 2d 1139, 1146–49 (D. Nev.
13 2006) (stigma of sex offender label for five years plus denial of low security classification and work
14 camp assignments an "atypical and significant hardship" for purposes of summary judgment
15 motion); *cf. Davis v. Neven*, No. 2:13–cv–01380–APG–PAL, 2014 WL 4630565, at *2–3 (D. Nev.
16 Sept. 9, 2014) (no due process violation where sex offender classification only affected inmate's
17 housing location).  In the absence of such allegations, the court is precluded from finding that the
18 misclassification amounted to an atypical or significant hardship beyond the ordinary incidents of
19 prison life. *See Cooper*, 55 F. Supp. 2d at 1102.

20 Given that defendant did not infringe on a protected liberty interest, plaintiff's due process
21 claim fails as a matter of law.  Having so concluded, the court need not reach defendant's
22 alternative arguments in favor of summary judgment.

### IV. CONCLUSION

24 Based upon the foregoing, the court recommends that defendant's motion for summary
25 judgment be granted in its entirety.  Defendant carried her burden of showing that plaintiff cannot
26 prevail on his First Amendment access to the court claim, as plaintiff has presented no evidence that
27

he suffered an actual injury in attempting to litigate a non-frivolous underlying claim, or on his Fourteenth Amendment due process claim, as he was not deprived of a valid liberty interest.

The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## V. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that defendant's motion for summary judgment (#28) be **GRANTED**;

**IT IS FURTHER RECOMMENDED** that the Clerk **ENTER JUDGMENT** and close this case.

**DATED:** April 21, 2016.

_____
**UNITED STATES MAGISTRATE JUDGE**